**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RUFINO CANO, Individually and on Behalf of All
Others Similarly Situated,

                                        Plaintiff,

-against-                                                            Civil Action No. 15 Civ. 4082
                                                                              (RRM)(RER)

NINETEEN TWENTY FOUR, INC. d/b/a
ROBERTA'S PIZZERIA, BRANDON HOY,
CARLO MIRARCHI, CHRISTOPHER
PARACHINI, and JOHN DOE CORPS. #1-10,
Jointly and Severally,

                                        Defendants.

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between Rufino Cano a.k.a. Rufino Galindo (the "Named Plaintiff"), as well as Opt-in Plaintiffs Ashley Martinez and James Perez (the "Opt-in Plaintiffs," and together with Named Plaintiff hereinafter the "Plaintiffs") and by Defendants (as defined below).

## 1.      RECITALS AND BACKGROUND

WHEREAS, the Named Plaintiff filed a Complaint on or about July 10, 2015 in the United States District Court for the Eastern District of New York and bearing the Civil Action No. 15 Civ. 4082 (RRM)(RER);

WHEREAS, on or about January 5, 2016 the Named Plaintiff and Defendants stipulated to, and the Court so ordered, the conditional certification of this matter as a collective action pursuant to 29 U.S.C. § 216(b) (ECF No. 22), resulting in the distribution of Notice of Lawsuit With Opportunity to Join, and Consent to Become a Party Plaintiff forms were timely returned and filed by the Opt-in Plaintiffs (ECF Nos. 23-24);

WHEREAS, the Parties (as defined below) have engaged in and completed extensive informal and formal discovery during the course of this Litigation and in connection with potential settlement pursuant to the Stipulated Protective Order Regarding Use and Disclosure of Confidential Information, which was So Ordered by the Court on July 7, 2016 (ECF No. 28.);

WHEREAS, the Parties negotiated extensively the settlement of this matter, holding numerous arms-length settlement discussions regarding their respective settlement positions and analysis of their worst and best case damages scenarios available in this matter given the facts

and law, resulting in the settlement in principle referenced in the Parties' letter to the Court dated November 29, 2016 (ECF No. 30);

WHEREAS, the Named Plaintiff and Opt-In Plaintiffs wish to amicably settle and resolve this matter on a class basis;

WHEREAS, the Plaintiffs, with consultation from Defendants, will seek the approval of the settlement proposed herein and certification of this matter as a collective action pursuant to 29 U.S.C. § 216(b) and class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only with respect to all current and former employees of Nineteen Twenty Four, Inc. who worked in any non-managerial position at or for Roberta's Pizzeria at any time during the Relevant Time Period (as defined below);

WHEREAS, Defendants denied and continue to deny all of the material allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate notices of settlement pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure to all Class Members;

WHEREAS, the purpose of this Agreement is to fully and finally release all State Law Claims and FLSA Claims (as defined below), between the Plaintiffs, the Class Members, and Defendants, including but not limited to, all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation or any other actions or proceedings that have or may be brought that relate to the State Law Claims and FLSA Claims; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiffs and Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs and Class.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.  DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

1.1 **"Action" or "Litigation."** The Action or Litigation shall mean the action mentioned above filed in the United States District Court for the Eastern District of New York styled *Cano v. Nineteen Twenty Four, Inc., et al.*, No. 15 Civ. 4082 (RRM)(RER).

1.2 **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator refers to the Administrator mutually-selected by the Parties that shall mail the Notices and administer this settlement as set forth herein. The Parties agree the Claims Administrator shall initially be Rust Consulting, Inc., subject to the Court's review and approval, or any other subsequent claims administrator mutually selected by the Parties should the Court decline the Parties' initial selection(s).

1.3 **"Agreement."** Agreement means this Settlement Agreement and Release.

1.4 **"Class" or "Class Member(s)."** Class or Class Members shall be defined as all current and former employees of Nineteen Twenty Four, Inc. who worked in any non-managerial position at or for Roberta's Pizzeria at any time between July 10, 2009 through the date the Court preliminarily approves the settlement, including but not limited to Plaintiffs and the FLSA Class. All Class Members will fully and finally release as against Releasees (as defined herein) any and all claims released as set forth in Section 4.1(A) below.

1.5 **"Class Counsel" or "Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean Brent Pelton, Esq. and Taylor Graham, Esq. of Pelton & Graham, LLC, 111 Broadway, Suite 1503, New York, NY 10006,

1.6 **"Class Member List."** The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) dates of employment (to the extent known); and (iv) social security numbers, if available, but that such social security numbers shall be contained in a confidential document that the Defendants shall provide to the Claims Administrator only. The Class Member List is to be used by Plaintiffs' Counsel and Claims Administrator to effectuate the settlement, and may not be copied, disseminated or used for any other purpose.

1.7 **"Class Representatives."** Class Representatives shall mean Named Plaintiff and Opt-in Plaintiffs.

1.8 **"Court."** The Court shall mean the United States District Court for the Eastern District of New York, the Honorable United States District Court Judge Roslynn Mauskopf presiding.

1.9 **"Days."** Unless otherwise specified, days shall mean calendar days.

1.10 **"Defendants."** The Defendants are Nineteen Twenty Four, Inc. (hereinafter "Roberta's"), Brandon Hoy, Christopher Parachini, and Carlo Mirarchi.

1.11 **"Defense Counsel."** Defense Counsel shall be Carolyn D. Richmond and Alexander W. Leonard of Fox Rothschild LLP.

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

**1.12** **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

**1.13** **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court has entered a Final Order approving this settlement and Agreement, and dismissing this Litigation and all Plaintiffs' and the Class' claims with prejudice, provided the time to appeal from the Final Order has expired and no notice of appeal has been filed. In the event a notice of appeal is filed, the Final Effective Date shall be the latest of the following has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

**1.14** **"Final Order."** The Final Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the settlement payments from the Settlement Account, approval of attorneys' fees and costs, approval of any service awards, and dismissal of this action.

**1.15** **"FLSA Class Members."** FLSA Class or FLSA Class Members shall be defined as all current and former employees of Nineteen Twenty Four, Inc. who worked in any non-managerial position at or for Roberta's Pizzeria at any time between July 10, 2012 and the date the Court preliminarily approves the settlement, including but not limited to the Plaintiff and Opt-in Plaintiffs. All FLSA Class Members will fully and finally release as against Releasees (as defined herein) any and all claims as set forth in Section 4.1(B) below.

**1.16** **"FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that were or could have been asserted pursuant to the Fair Labor Standards Act or any of its implementing regulations by or on behalf of Plaintiffs or the Class Members.

**1.17** **"Implementing Order."** The Implementing Order shall mean the Order entered by the Court: (i) effectuating the settlement; (ii) approving the Notice and Claim forms; and (iii) directing the manner and timing of publishing the Notice to the Class.

**1.18** **"Named Plaintiff."** The Named Plaintiff shall mean Rufino Cano a.k.a. Rufino Galindo.

**1.19** **"Net Settlement Fund."** Net Settlement Fund shall mean the remainder of the Settlement Fund after subtracting (1) Court-approved attorneys' fees and costs; (2) Court-approved service awards; (3) Court-approved claims administration costs, and (4) any other costs, expenses, fees, or other distributions associated with the settlement.

4

**1.20** **"Notice" or "Notices."**  Notice or Notices shall mean the Court-approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement which shall be drafted by Class Counsel and reviewed, revised, and approved by Defendants.

**1.21** **"Objector."**  An Objector shall mean any Class Member who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.22** **"Opt-In Plaintiffs."**  Opt-In Plaintiffs shall mean Ashley Martinez and James Perez.

**1.23** **"Opt-out Statement."**  An Opt-out Statement is a written signed statement by a Class Member who, in accordance with Section 2.9 of this Settlement Agreement, has decided to opt-out and not be included in this Agreement.

**1.24** **"Parties**."  The Parties shall refer to Plaintiffs, Defendants and the Class Members collectively.

**1.25** **"Plaintiffs."**  Plaintiffs shall mean Opt-In Plaintiffs and Named Plaintiff.

**1.26** **"Relevant Period" or "Relevant Time Period."**  The Relevant Period or Relevant Time Period means July 10, 2009 through the date the Court preliminarily approves the settlement.

**1.27** **"Qualified Class Member."**  Qualified Class Member shall mean a Class Member who does not submit a timely Opt-out Statement in accordance with Section 2.9 of this Settlement Agreement.

**1.28** **"Service Award Plaintiffs."**  The Service Award Plaintiffs shall mean Rufino Cano, Ashley Martinez, and James Perez.

**1.29** **"Settlement Account."**  The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties. The Settlement Account shall contain the aggregate of all Claims, service awards, professional fees and costs as authorized by the Court in the Final Order, but in no event shall the Settlement Account exceed the Settlement Fund.

**1.30** **"Settlement Checks."**  The Settlement Checks shall mean the checks issued to Plaintiffs and the Class Members from the Settlement Account by the Administrator as calculated by the Administrator in accordance with this Agreement.

**1.31** **"Settlement Fund."**  The Settlement Fund shall mean the maximum aggregate amount that can be and is to be paid by Roberta's pursuant to this Agreement and includes service awards, professional fees, costs and expenses.  Under no circumstances shall the Settlement Fund exceed Three Hundred Seventeen Thousand Five Hundred Dollars and Zero Cents ($317,500.00), excluding the employer's share of payroll taxes typically borne by the employer, regardless of the number of Class Members.

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

**1.32** **"State Law Claims."** The State Law Claims shall mean all wage and hour claims that could have been asserted under New York State law, or any relevant regulations, by Plaintiffs or the Class Members.

**2.** **INITIAL PROCEDURAL ISSUES**

**2.1** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

**2.2** **Retention of the Administrator.** Plaintiffs shall engage an Administrator with the mutual agreement of Defense Counsel to mail Notices and administer the settlement. The Parties agree that they shall initially select and agree to Rust Consulting, Inc. to be the Administrator in this matter, subject to review and approval by the Court. The Parties agree that they shall mutually select any subsequent Adminstrator(s) should the Court reject the Parties' initial choice.

**2.3** **Responsibilities of the Administrator**. The Administrator shall be responsible for:

A. preparing, printing and disseminating the Notice to the Class;

B. copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

C. promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class which the Administrator receives;

D. keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

E. mailing all required tax forms to Class Members and to Class Counsel as provided herein;

F. setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Plaintiffs' Counsel, the Claims Administrator and to Plaintiffs;

G. calculating the amount of each Class Member's Settlement Check;

H. calculating the employer-side payroll taxes required pursuant to the settlement;

I. calculating and paying each Class Member's taxes and preparing appropriate tax forms for Defendants and for each Class Member;

J. mailing the Settlement Checks to Class Members;

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

K.      ascertaining current address and addressee information for each Notice returned as undeliverable and the mailing of Notice;

L.      responding to inquiries of the Class regarding procedures for filing objections and Opt-out Statements;

M.      referring to Plaintiffs' Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

N.      responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

O.      promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

P.      maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

Q.      confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the administration of the settlement;

R.      timely responding to communications from the Parties or their counsel;

S.      preparing and mailing all notices required pursuant to the Class Action Fairness Act; and,

T.      such other tasks the Parties mutually agree.

In addition, no later than ten (10) days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel (a) a list of all Class Members; (b) a list of all Class Members who filed timely objections; and, (c) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Administrator shall also provide Defendants with an updated address list for the Class. Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party regarding the status of the mailing of the Notices to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**2.5    Notice.** The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out of, do nothing and remain in the Class in order to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within fourteen (14) days of receiving the Class List from Defendants, the Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notices of Proposed Settlement and Fairness Hearing. The Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including one

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.6**     **Access to the Administrator**.  The Parties will have equal access to the Administrator throughout the claims administration period.  Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information necessary to reasonably assist the Administrator in locating the Class.

**2.7**     **Approval of the Implementing Order.**

(A)     Plaintiffs' Counsel shall apply to the Court to approve the proposed Notice and the method of distribution set forth in this Agreement. The proposed Notice, Motion for Approval, and Implementing Order shall be drafted by Plaintiffs' Counsel, but subject to comment and approval by Defense Counsel.

(B)     The proposed Implementing Order will seek the setting of a deadline of forty-five (45) days from the initial mailing of Notice to the Class: (a) to file Opt-out Statements and/or (b) to become Objectors. The Proposed Implementing Order shall also seek to set a date for the Fairness Hearing, for Final Approval of the Settlement which shall be approximately ninety (90) days following the date that the Court enters the proposed Implementing Order.

(C)     Plaintiffs' Counsel will inform the Court of the intended process to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed notice to the Class; (3) incorporate the terms of the Releases, as described herein; (4) dismiss the Litigation with prejudice; and (5) award Plaintiffs' Counsel fees, expenses and costs.

(D)     The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order, and Final Judgment and Dismissal with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment and Dismissal with prejudice shall be submitted to the Court.

**2.8**     **Notice to Class**

(A)     Within twenty-one (21) days of the Court's entry of the Implementing Order, Defense Counsel will provide Plaintiffs' Counsel and the Administrator, in electronic form and for all Class Members, the Class Member List (except that Plaintiffs' Counsel will not be provided the social security numbers, if known, for the class).  All information provided regarding the Class will be treated as confidential information by Plaintiffs' Counsel and the Administrator.  Said

information will not be used by Plaintiffs' Counsel and the Administrator for any purpose other than to effectuate the terms of settlement.

## 2.9 Opt-outs.

(A) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Roberta's wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Administrator within forty-five (45) days after the initial mailing of Notice to the Class. Plaintiffs, as signatories to this Agreement, may not opt-out of the settlement.

(B) The end of the time period to opt-out of the settlement ("Opt-out Period") shall be forty-five (45) days after the initial mailing of Notice to the Class.

(C) The Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D) Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be subject to the releases set forth herein, and will be bound by the Judgment. Defendants shall have no obligation to pay any Class Member who Opts-out of this settlement as set forth in this Agreement.

## 2.10 Objections to Settlement.

(A) Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Administrator via First-Class United States Mail post-marked by forty-five (45) days after the initial mailing of Notice to the Class. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone number for the Class Member making the objection. The Administrator will stamp the date received on the original and send copies of each objection, supporting documents, to Plaintiffs' Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B) An Objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.

9

An Objector may withdraw his or her objections at any time. An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement.

**2.11** **Fairness Hearing and Motion for Final Approval and Dismissal**. At the Fairness Hearing, Plaintiffs will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order Roberta's to fund the Settlement Fund pursuant to the schedule set forth in Section 3.1(D); (3)order the Administrator to distribute the Settlement Checks to the Class Members; (4) order the attorneys' fees, expenses and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (5) dismiss the Litigation with prejudice; (6) permanently enjoin all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement; (7) order entry of a Final Order and Final Judgment in accordance with this Agreement; and (8) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.12** **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter a Final Judgment and Final Order in accordance with this Agreement, or such judgment or order does not become Final as defined herein, the Litigation will proceed as if no settlement had been attempted.

**2.13** **Discretionary Termination by Defendants Due to Opt-Outs.** In the event that either (i) five percent (5%) or more of all Class Members, excluding the Plaintiffs, or (ii) Class Members, excluding Plaintiffs, who in the aggregate worked five percent (5%) or more of all weeks worked by the Class Members, excluding Plaintiffs, timely opt out of the Agreement pursuant to Section 2.9, Defendants may, at their sole discretion, elect to void the Agreement prior to the Fairness Hearing by informing Class Counsel or the Court in writing.

**3.** **SETTLEMENT TERMS**

**3.1** **Settlement Fund Computation and Allocations.**

(A) Individual Class Members' proportionate shares of the Settlement Fund shall be computed pursuant to the formula below ("Individual Settlement Amount"). Under no circumstance will any Class Member's Individual Settlement Amount be less than $100.

(1) Class Members shall receive 0.7 points for every full or partial week worked between January 1, 2015 through the date the Court grants preliminary approval of the Settlement Agreement and Notice according to each Class Member's dates of employment.

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

(2)     Class Members shall receive 1.2 points for every full or partial week worked between July 10, 2012 and through December 31, 2015 according to each Class Member's dates of employment.

(3)     Class Members shall receive 1 point for every full or partial week worked from June 4, 2011 through July 9, 2012 according to each Class Member's dates of employment.

(4)     Class Members shall receive 1.5 points for every full or partial week worked from July 10, 2009 through June 3, 2011 according to each Class Member's dates of employment.

(5)     In addition to the points allocated above, Class Members who worked as "utility" employees as defined in Roberta's records, shall receive an additional 0.5 points for every week worked between July 10, 2009 through the date the Court grants preliminary approval of the Settlement Agreement and Notice according to each Class Member's dates of employment.

(6)     The Net Settlement Fund will be divided by the aggregate number of points accrued by all Class Members to determine the Point Value.

(7)     Each Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

(8)     If any Class Member's Individual Settlement Amount under this formula is less than $100, that Class Member's Individual Settlement Amount will be increased to $100, subtracted from the Net Settlement Fund, and all other Class Members' Individual Settlement Amounts will be recalculated according to the formula set forth above in Section 3.1(A)(1-3) in order to meet this floor payment ("Floor Payment").

(9)     Only Qualified Class Members shall be entitled to receive his or her Individual Settlement Amount.  Any Individual Settlement Amounts calculated for individuals who timely opt-out of this settlement under Section 2.9 shall remain with Roberta's and will not be paid out pursuant to this settlement.

(B)     **Service Awards to Class Representatives**.  Class Counsel will seek Court Approval of the following service awards to the Plaintiffs, in consideration of work performed on behalf of the Class: $4,000 to Rufino Cano, $1,500 to Ashley Martinez, and $1,500 to James Perez (i.e. $7,000 in total). Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the Settlement Fund or otherwise affect the terms of this Agreement.  This provision shall not prohibit Defendants or Defense Counsel from responding to any inquiries made by the Court or any other judicial or administrative forum.  The

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

substance of Plaintiffs' application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service awards shall not terminate this Agreement or otherwise affect the Court's Final Approval.

(C) **Maximum Payment**. The Parties expressly acknowledge that Roberta's shall not be required to pay more than the Settlement Fund of Three Hundred Seventeen Thousand Five Hundred Dollars and Zero Cents ($317,500.00) to the Class Members, Plaintiffs' Counsel, Claims Administrator, Opt-In Plaintiffs or to anyone else (excluding employer's share of payroll taxes due under this Agreement), regardless of the number of Class Members included in this settlement, pursuant to the terms of this Agreement.

(D) **Installment Payments.** The Settlement Fund shall be funded by Roberta's in two (2) installment payments as follows:

(1) The first payment shall be one-half (1/2) of the Settlement Fund, which, for the absence of any doubt, shall not exceed One Hundred Fifty-Eight Thousand Seven Hundred Fifty Dollars and Zero Cents ($158,750.00). The above described first payment will be made by Roberta's to the Claims Administrator on or before three (3) months after the Final Effective Date ("First Payment").

(2) The second payment shall be the remaining one-half (1/2) of the Settlement Fund, which, for the absence of any doubt, shall not exceed One Hundred Fifty-Eight Thousand Seven Hundred Fifty Dollars and Zero Cents ($158,750.00). The above described second payment will be made by Roberta's to the Claims Administrator on or before three (3) months after the First Payment ("Second Payment").

(3) Nothing herein shall be construed as prohibiting Roberta's from remitting the entire Settlement Fund, in whole or in part, prior to the Final Effective Date without penalty.

(4) Any employer paid taxes Roberta's is responsible for paying in connection with the settlement shall be due at the same time the Second Payment is due.

(E) **Mailing of Settlement Checks**.

(i) The Claims Administrator shall, within ten (10) days after receipt of the Second Payment, provided the Final Effective Date has passed, mail to Qualified Class Members Settlement Checks comprising their Individual Settlement Amounts, any Service Awards approved by the Court, and release the Claims Administrator's fee as well as any approved Attorneys'

12

Fees and Costs to Class Counsel. The Parties may mutually-agree to make an interim distribution after the First Payment, but are not required to do so given the short time period between the First Payment and Second Payment.

(iii)     The Plaintiffs and Qualified Class Members shall have one hundred twenty (120) days after those payments are mailed (the "Void Date") to cash their respective Settlement Checks. The Plaintiffs and Qualified Class Members may request reissued checks during this time period, and any reissued checks will be valid until the latter of the Void Date or forty-five (45) days after the date of the reissued check. All amounts remaining in the fund on the latter of ten (10) days after the Void Date or the date of the last reissued check will revert to Roberta's.

**3.2     Attorneys' Fees and Costs.**  At the Fairness Hearing, Class Counsel will petition the Court for an award of litigation costs and attorneys' fees of no more than one-third (1/3) of the Settlement Fund after the deduction of all Service Awards, Claims Administrator fees and costs, and other litigation costs. These fees and costs shall come out of the Settlement Fund. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund or otherwise affect the terms of this Agreement. This provision shall not prohibit Defendants or Defense Counsel from responding to any inquiries made by the Court or any other judicial or administrative forum. The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**3.3     Claims Administrator's Fees and Costs.**  At the Fairness Hearing, Class Counsel will petition the Court for an award of the Claims Administrator's reasonable fees and costs to be paid out of the Settlement Fund, which shall not exceed Twenty-Five Thousand Dollars and Zero Cents ($25,000). Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund or otherwise affect the terms of this Agreement. This provision shall not prohibit Defendants or Defense Counsel from responding to any inquiries made by the Court or any other judicial or administrative forum. The substance of Class Counsel's application for the Claims Administrator's fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for the Claims Administrator's fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**3.4     Tax Characterization.**

(A)     Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting ("Wage Payments"), and (ii) 50% in consideration for liquidated damages and interest as non-wage payments subject to 1099 reporting ("Non-Wage Payments").

(B)     All Wage Payments (*i.e.,* the portion set forth in Section 3.4(A)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. All Non-Wage Payments (*i.e.,* the portion set forth in Section 3.4(A)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Class Member. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings. Class Counsel will receive a Form 1099 for this payment. Any service award payment shall be made without any withholdings and reported to the IRS via a Form 1099. Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 3.4.

(C)     Roberta's shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments. Roberta's shall not have any tax responsibility for the non-wage portion of the payments to Class Members. The Claims Administrator shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments.

**3.5     Hold Harmless.**

(A)     With respect to payments received pursuant to this Agreement that are not characterized as W-2 wage income, the Plaintiffs and Class Members assume full responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any individual or entity and/or Defendants are liable for any failure by any Plaintiff, Class Member and/or Defendant to pay federal, state or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Plaintiffs and the Class Members agree to hold Defendants harmless, and indemnify Defendants from any payments the Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form

14

1099 and any Plaintiff's and/or Class Member's failure to pay any taxes that any such individual or entity owes related to said income.

(B)     With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Class Counsel assumes responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

## 4.     RELEASE

### 4.1     Release of Claims.

(A)     Upon the Effective Date, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, Defendants' subsidiaries (including but not limited to any grandchild entities, great grandchild entities, and so on), parents (including but not limited to any grandparent entities, great grandparent entities, and so on), affiliates, successors, related entities, assigns, heirs, executors, administrators, and attorneys, including but not limited to Severed Heads LLC, RFPP LLC, and So Goth LLC, and all of their present and former directors, officers, partners, shareholders, members, employees, representatives, agents, attorneys, owners, and insurers (collectively "Releasees"), from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with Releasees under New York state and/or local law, including but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, liquidated damages, penalties, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, spread-of-hours claims, meal break claims, meal credit claims, uniform maintenance claims, uniform or tools-of-the trade reimbursement claims, call-in pay claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under New York state and/or local wage and hour laws, including but not limited to the New York Labor Law, New York Code of Rules and Regulations, New York Hospitality Industry Wage Order, New York Order for Miscellaneous Industries and Occupations, the New York Restaurant Industry Wage Order, and the New

15

York Wage Theft Prevention Act, through the Effective Date. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties, interest, and attorneys' fees' and costs.

(B)     Upon the Effective Date, and except as to such rights or claims as may be specifically created by this Agreement, each FLSA Class Member on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with Releasees under federal law, including but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, liquidated damages, penalties, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, claims for uniform or tools-of-the trade reimbursement, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal wage and hour laws, including but not limited to the Fair Labor Standards Act ("FLSA"), through the Effective Date. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties, interest, and attorneys' fees' and costs.

(C)     All Settlement Checks shall contain, on the back of the check, the following endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Cano v. Nineteen Twenty Four, Inc., et al.*, No. 15 Civ. 4082 (RRM)(RER) and release Defendants from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation brought or which could have been brought in the Litigation, including but not limited to minimum wage and overtime claims.

_____     Dated: _____
Signature"

Any modification or amendment of the above-language by the Class Member, at Defendants' discretion, may not be accepted, and may void the Settlement Check. The Claims Administrator shall provide Defendants signed copies of each Settlement Check after they have been cashed.

(D)     In addition to the waivers and releases contained in 4.1(A)-(C) above, each Service Award Plaintiff knowingly and voluntarily, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from

16

any and all claims arising up to and through the Effective Date, both known and unknown, which the Service Award Plaintiffs have or may have against Releasees including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Age Discrimination in Employment Act; The Americans with Disabilities Act of 1990; The Fair Labor Standards Act; The Fair Credit Reporting Act; The Sarbanes Oxley Act; The Occupational Safety and Health Act; The New York Corrections Law, including Sections 750-755 thereof; The Family and Medical Leave Act of 1993; The New York State Human Rights Law; The New York Civil Rights Law; The New York City Human Rights Law; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, penalties, interest, and attorneys' fees' and costs.

(E)     **No Assignment.**  Class Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(F)     **Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(G)     **No Additional Attorneys' Fees.** Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel, the Plaintiffs and the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or

17

they may have against Defendants for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class. Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation in the Litigation.

**4.2 Communications with the Media.**

(A) The Service Award Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel agree that they will not issue or cause to be issued any press release, post, distribution, or any other communication to any press, media or media representative, including but not limited to any electronic, print, or digital media or social networking sites, information regarding the Litigation, the claims asserted therein, the settlement of the Litigation, or the amount of money paid to resolve the Litigation. If contacted by the press or other forms of media, including but not limited to any blogs or other social media websites, the parties and their counsel will state that the Litigation has been resolved to the satisfaction of the parties. Notwithstanding the terms of this paragraph, the Parties shall be free to make whatever disclosures they deem appropriate to their attorneys and financial and tax advisors, as well as, in Defendants' case, to its members, officers, shareholders, directors, and/or other relevant stake holders as well as their attorneys and financial and tax advisors, with respect to this Litigation provided those disclosures are truthful. Nothing herein shall prevent Class Counsel, the Settlement Administrator, or the Service Award Plaintiffs from communicating with Class Members.

## 5. INTERPRETATION AND ENFORCEMENT

**5.1 Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2 Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3 Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.4 Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.5    **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.6    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.7    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

5.9    **Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10   **Counterparts**.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11   **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16

**PLAINTIFFS:**

**CLASS COUNSEL – PELTON & GRAHAM, LLC, ON BEHALF OF THE CLASS**

By: _____ Date: Dec. 23, 2016
   **BRENT PELTON, ESQ.**
   **TAYLOR GRAHAM, ESQ.**

_____ Date: Dec. __, 2016
   **CANO, RUFINO (A.K.A. RUFINO GALINDO)**

_____ Date: Dec. __, 2016
   **MARTINEZ, ASHLEY**

_____ Date: Dec. __, 2016
   **PEREZ, JAMES**

**DEFENDANTS:**

**NINETEEN TWENTY FOUR, INC.**

By: _____ Date: Dec. __, 2016

_____ Date: Dec. __, 2016
   **BRANDON HOY**

_____ Date: Dec. __, 2016
   **CHRISTOPHER PARACHINI**

_____ Date: Dec. __, 2016
   **CARLO MIRARCHI**

20

## PLAINTIFFS:

**CLASS COUNSEL – PELTON & GRAHAM, LLC, ON BEHALF OF THE CLASS**

By: _____     Date: Dec. ___, 2016
    **BRENT PELTON, ESQ.**
    **TAYLOR GRAHAM, ESQ.**

_____     Date: Dec. _21_, 2016
    **CANO, RUFINO (A.K.A. RUFINO GALINDO)**

_____     Date: Dec. ___, 2016
    **MARTINEZ, ASHLEY**

_____     Date: Dec. ___, 2016
    **PEREZ, JAMES**

## DEFENDANTS:

**NINETEEN TWENTY FOUR, INC.**

By: _____     Date: Dec. ___, 2016

_____     Date: Dec. ___, 2016
    **BRANDON HOY**

_____     Date: Dec. ___, 2016
    **CHRISTOPHER PARACHINI**

_____     Date: Dec. ___, 2016
    **CARLO MIRARCHI**

ACTIVE\43606933.v1-12/13/16

**PLAINTIFFS:**

**CLASS COUNSEL – PELTON & GRAHAM, LLC, ON BEHALF OF THE CLASS**

By: _____ Date: Dec. __, 2016
    **BRENT PELTON, ESQ.**
    **TAYLOR GRAHAM, ESQ.**


_____ Date: Dec. __, 2016
    **CANO, RUFINO (A.K.A. RUFINO GALINDO)**

_____ Date: Dec. 23rd, 2016
    **MARTINEZ, ASHLEY**

_____ Date: Dec. __, 2016
    **PEREZ, JAMES**


**DEFENDANTS:**

**NINETEEN TWENTY FOUR, INC.**

By: _____ Date: Dec. __, 2016


_____ Date: Dec. __, 2016
    **BRANDON HOY**

_____ Date: Dec. __, 2016
    **CHRISTOPHER PARACHINI**

_____ Date: Dec. __, 2016
    **CARLO MIRARCHI**


20

**<u>PLAINTIFFS:</u>**

**CLASS COUNSEL – PELTON & GRAHAM, LLC, ON BEHALF OF THE CLASS**

By: _____     Date: Dec. __, 2016
    **BRENT PELTON, ESQ.**
    **TAYLOR GRAHAM, ESQ.**

_____     Date: Dec. __, 2016
    **CANO, RUFINO (A.K.A. RUFINO GALINDO)**

_____     Date: Dec. __, 2016
    **MARTINEZ, ASHLEY**

_____     Date: Dec. 22 2016
    **PEREZ, JAMES**


**<u>DEFENDANTS:</u>**

**NINETEEN TWENTY FOUR, INC.**

By: _____     Date: Dec. __, 2016


_____     Date: Dec. __, 2016
    **BRANDON HOY**

_____     Date: Dec. __, 2016
    **CHRISTOPHER PARACHINI**

_____     Date: Dec. __, 2016
    **CARLO MIRARCHI**

ACTIVE\43606933.v1-12/13/16
80128039v.1
ACTIVE\43763324.v1-12/22/16