# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RUFINO CANO, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | |
| -against- | **15 Civ. 4082 (RER)** |
| **NINETEEN TWENTY FOUR, INC. d/b/a ROBERTA'S PIZZERIA, BRANDON HOY, CARLO MIRARCHI, CHRISTOPHER PARACHINI, and JOHN DOE CORPS. #1-10, Jointly and Severally,** | |
| **Defendants.** | |

## [FINAL] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

The above-captioned matter came before the Court on Plaintiffs' Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final Approval") (Dkt. Nos. 39-41).

## I.       Background and Procedural History

1.       The parties' proposed settlement resolves all claims in the action entitled *Rufino Cano v. Nineteen Twenty Four, Inc. d/b/a Roberta's Pizzeria, et al.*, Civil Action No. 15 Civ. 4082 (RER) (the "Litigation"), which is currently pending before this Court.

2.       The Plaintiffs in this action allege, among other things, that Defendants failed to pay overtime premiums for the hours that they worked over 40 in a given workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), §§ 650 *et seq.* and supporting regulations.  Plaintiffs further allege that Defendants

failed to pay spread-of-hours premiums for days in which Plaintiffs worked over ten (10) hours in a day, and failed to provide wage statements and wage notices, in violation of the NYLL.

3.  On July 10, 2015, the Named Plaintiff[1] filed his Complaint as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA. (*See* Dkt. No. 1). The Named Plaintiff was a restaurant worker who allegedly worked for Defendants and who alleges that he and other restaurant employees were not paid overtime premiums when they worked in excess of forty (40) hours in a given workweek, spread-of-hours premiums when they worked in excess of ten (10) hours in a given day, and that they were not provided with wage statements and wage notices as required by the NYLL. (*See id.*). Defendants Nineteen Twenty Four, Inc. d/b/a Roberta's Pizzeria, Brandon Hoy, Carlo Mirarchi and Christopher Parachini (the "Defendants" or "Roberta's") filed their Answer on September 25, 2015, disputing the material allegations and denying any liability in the proposed class action. (Dkt. No. 15).

## II.     Overview of Investigation and Discovery

4.  During the pendency of the litigation, Plaintiffs' counsel conducted substantial investigation and prosecution of the claims in the lawsuit, including, but not limited to, discussions with the Named Plaintiff and additional plaintiffs who opted into this action, negotiating a motion for conditional certification of an FLSA collective (Dkt. No. 19), reviewing time and payroll records, responding to Defendants' discovery demands, and engaging in significant settlement negotiations. (Graham Decl. ¶¶ 16, 17).

## III.    Settlement Negotiations

5.  Over the course of the litigation, the parties engaged in informal and formal settlement negotiations. (*Id.* ¶ 17). The parties exchanged documents for review pursuant to the

---

[1] Unless otherwise specified herein, capitalized terms shall have the same meaning as set forth in the parties' Settlement Agreement and Release.

ACTIVE\45311060.v1-4/10/17

Stipulated Protective Order Regarding Use and Disclosure of Confidential Information that was So Ordered by the Court on July 7, 2016 (Dkt. No. 28), including time and payroll records, which Plaintiffs analyzed in compiling a damages analysis that was exchanged with Defendants, for settlement purposes which Defendants analyzed and responded to for settlement purposes. (*Id.*).

6.      In or around mid-November 2016, the parties reached a settlement in principle and subsequently negotiated the remaining terms of the settlement (*see id.*), which have been memorialized in a formal Settlement Agreement and Release (the "Settlement Agreement"), attached to the Graham Decl. as Exhibit B.[2]

7.      At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis.

8.      The Parties agreed to settle this case for a total Settlement Amount of up to $317,500.00 (the "Settlement Amount"). (Ex. B (Settlement Agreement) ¶¶ 1.31, 3.1(C)). After deduction of attorneys' fees and costs, service awards for the Named and Opt-in Plaintiffs and settlement administration costs, the remaining funds will be allocated among Participating Class Members (the "Net Settlement Fund"). (Ex. B ¶ 3.2).  All current and former employees of Defendants who worked at or for Roberta's in any non-managerial position at any time between July 10, 2009 and December 30, 2016 ("Class Members") are eligible to participate in the Settlement. (Ex. B ¶ 1.4).

9.      Class Members who did not opt-out of the Settlement shall be "Participating Class Members" and will receive a portion of the Net Settlement Fund, which will be allocated based on each Class Members' total points.  Only six Class Members timely opted-out of the

---

[2] All exhibits referenced herein are attached to the Graham Decl.

settlement, namely: (1) Greg Goldman, (2) Carly Planker, (3) Eduard Monsalve, and (4) Amy Buckley.[3]

10.     Points shall be assigned on the basis of weeks worked, weighted towards the earlier portion of the relevant time period (i.e. 2009-2012), the time period encompassing the applicable FLSA statute of limitations period, and whether or not the Class Member worked for Defendants in a "utility" position, all of which is determined with information contained in Defendant's payroll records. (*See* Ex. B ¶ 3.1).  No Class Member will receive less than $100.00 (Ex. B ¶ 3.1(A)) and any amounts allocated to Class Members who opt-out from the settlement will remain with Defendants. (Ex. B ¶ 3.1(D)).

11.     The amounts paid to Class Members will be allocated fifty percent (50%) as W-2 wage payments and (50%) as non-wage liquidated damages and interest, such that all W-2 payments shall be subject to payroll and withholdings taxes.  (Ex. B at ¶ 3.4(A))

12.     The Settlement Fund will be funded by Defendants in two (2) installment payments the first being on or before three (3) months after the Effective Date of the settlement and the second being on or before three (3) months after the first payment. (Ex. B ¶ 3.1(D)).

13.     Payments to Class Members will be mailed within ten (10) days of receipt by the Claims Administrator of the second installment payment.

14.     Any Settlement Checks that have not been processed by the later of ten (10) days after either the close of the one hundred and twenty (120) day acceptance period for Class Members to cash or deposit their checks or the date of the last reissued check will revert to Defendants. (*Id.* ¶ 3.1(E)).

## IV.     Preliminary Approval of Settlement and Dissemination of the Notice

---

[3] In advance of the fairness hearing, Plaintiffs will file a supplemental declaration from the Settlement Administrator detailing the final number of opt-outs/objections obtained through the deadline for opt-outs/objections on April 17, 2017. Additionally, Esther Kim and Nick T. Oleson opted out. (see Dkt No. [42]).

15.     On December 30, 2016, the Court preliminarily approved the parties' proposed class settlement and authorized the issuance of Notice to Class Members, approving the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") and authorizing the mailing of the Notice to the Class Members. (*See* Order of the Court dated Dec. 30, 2016).

16.     Pursuant to Plaintiffs' Motion for Preliminary Approval (Dkt. Nos. 33-35) and the Court's Order (*see id.*), Defendants provided the Settlement Administrator with a confidential list of Class Members which included, to the extent included in Defendants' records, the Class Members' names and last known address. (*See* Declaration of Abigail Schwartz, annexed to Graham Decl. as Exhibit A, ¶ 10).  The Settlement Administrator mailed the Notice to the Class Members via First Class Mail on March 3, 2017. (*Id.*).

17.     If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, the Settlement Administrator performed an advanced address search ("skip trace") on the address using a nationally recognized location service. (*Id.* ¶ 11).  As of the date of this Order, of the 1,047 Notices that were mailed to Class Members, there were 236 Notices that were undeliverable because the settlement administrator was unable to locate the Class Members' current mailing address. (*Id.*).

18.     The Notices advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information regarding the case and settlement, as well as how to opt-out of or object to the settlement. (Dkt. No. 35, Ex. C (Proposed Notice)).

**V.     Contributions of the Named Plaintiffs**

19.     The Named and Opt-in Plaintiffs were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (*See* Graham Decl. ¶¶ 11-13).

The Named and Opt-in Plaintiffs served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, producing documents in support of their claims, relaying information to Class Members during the pendency of this case and assuming the burden associated with assisting with litigation. (*Id.*)

20.     The Named and Opt-in Plaintiffs also assumed the risks of litigation as well as other professional risks and burdens, including the potential for retaliation and blacklisting in the industry (although there is no allegation against Defendants that such conduct has actually occurred). (*Id.* ¶ 14).

21.     Without the effort of the Named and Opt-in Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved.

22.     Service Awards of this type are commonly awarded in complex wage and hour litigation.

**VI.     Final Approval of Class Settlement**

23.     The Court held a fairness hearing on April 24, 2017.

24.     Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Graham Decl. as Exhibit B; (ii) approves the service payments to the Named Plaintiff in the amount of $4,000 and to the Opt-in Plaintiffs in the amount of $1,500 each; and (iii) approves an award of attorneys' fees in the amount of $95,094.90 (one-third (1/3) of the Settlement Amount after subtracting litigation costs, service awards, and settlement administrator fees and costs) and reimbursement of litigation expenses in the amount of $950.30.

6

25.     Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *Elliot v. Leatherstocking Corp.*, No. 10 Civ. 934, 2012 U.S. Dist. LEXIS 171443, at *7 (N.D.N.Y. Dec. 4, 2012).   "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.*, 396 F.3d at 116 (internal quotations omitted).

26.     If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *6.   "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id*. "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id*. (citations omitted).

## A.     Procedural Fairness

27.     It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation and discovery which allowed each side to assess the

potential risks of continued litigation, and robust settlement discussions, including several discussions via telephone and email. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

### B.    Substantive Fairness

28.    In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *13, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

29.    Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

30.    The response to the settlement has been positive. There have been four (4) requests for exclusion and no objections to the Settlement. (Schwartz Decl. ¶¶ 13-14). "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of

8

fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at \*11 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

31.     The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)   (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel has interviewed several current and former employees of Defendants to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed documents including but not limited to time and payroll data and employee files; provided 26(a) disclosures; fielded questions from Plaintiffs and Class Members; performed extensive legal research; negotiated a consent FLSA § 216(b) collective action motion; and compiled and negotiated a damages analysis and discussed the same on the telephone and email. (Graham Decl. ¶¶ 16-17).

32.     The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiffs would have to defeat Defendants' arguments that, *inter alia*, the Plaintiffs were paid in accordance with the federal

9

and state law. "Litigation inherently involves risks." *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *11. The settlement alleviates this uncertainty. *Id.* at *12.

33.     The risk of maintaining the class status through trial is also present. Although the Plaintiffs have not yet moved for Rule 23 class certification, any such motion will be highly contested.  Specifically, Defendants would argue that there are individualized questions as to the job duties, hours worked, and payment structure for the class members that makes certification and ultimately trial on a class-wide basis impractical.  Settlement eliminates the risk, expense, and delay inherent in this process. *Elliot*, 2012 U.S. Dist. LEXIS 171443, at *11 (discussing the burdens and risks of maintaining class status through trial).

34.     The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages.  Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  This factor does not hinder granting final approval.

35.     The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "'Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "Moreover, when settlement assures immediate payment of substantial amounts to class

members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at \*34 (S.D.N.Y. Sept. 16, 2011). The eighth and ninth Grinnell factors favor final approval.

## VII. Approval of the FLSA Settlement

36.     The Court hereby approves the FLSA settlement.

37.     Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 U.S. Dist. LEXIS 166383, at \*13, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

38.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bone fide disputes. *See*, *e.g.*, *Willix*, 2011 U.S. Dist. LEXIS 21102, at \*9; *Elliot*, 2012 U.S. Dist. LEXIS 171443, at \*7-\*8. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Massiah*, 2012 U.S. Dist. LEXIS 166383, at \*14. If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.*, 2012 U.S. Dist. LEXIS 166383, at \*6

39.     The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

## VIII. Dissemination of Notice

40.     Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified Class Member at his or her last known address. (Schwartz Decl. ¶ 10). The Court finds that the mailed Notice fairly and adequately advised Class Members of the terms of the

settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted April 24, 2017. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

## IX. Award of Fees and Costs to Class Counsel and Service Awards to Named Plaintiffs

41.      Class Counsel did substantial work identifying, investigating, prosecuting, and settling the Named and Opt-in Plaintiffs' and the Class Members' claims.

42.      Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

43.      The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class' interests.

44.      The Court hereby awards Class Counsel $95,094.90 in attorneys' fees or one-third (1/3) of the Settlement Amount after subtracting Class Counsel's actual litigation costs, Service Awards and Settlement Administrator fees and costs.

45.      The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Hernandez,* 2015 U.S. Dist. LEXIS 44281, at *23.

46.      Class Counsel's request for one-third (1/3) of the settlement amount is reasonable and "consistent with the norms of class litigation in this circuit." *Willix,* 2011 U.S. Dist. LEXIS 21102, at *17 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action). *See, e.g., Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 U.S.

12

Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008) (awarding 1/3 of $450,000.00 common fund in wage and hour case); *In re Arotech Corp. Sec. Litig.*, No. 07-CV-1838, 2010 U.S. Dist. LEXIS 55570, _(E.D.N.Y. June 7, 2010) ("33% of the common fun is considered routine and therefore reasonable . . . ."). Class Counsel's attorneys' fees request of thirty-three percent (33%) is in line with decisions in this Circuit which have routinely awarded between thirty and thirty-three percent (30-33%) of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507, 2014 U.S. Dist LEXIS 37007, at *7-8 (S.D.N.Y. March 20, 2014) (noting that, "[i]n this Circuit, courts typically approve attorneys' fees that range between 30 and 33 percent" and citing cases) (citing *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543 (ETB), 2013 U.S. Dist. LEXIS 83342 (E.D.N.Y. June 13, 2013) (collecting cases)).

47.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of one-third (1/3) of the settlement amount is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 111–12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third (1/3) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.

48.     Even evaluating the attorneys' fees requested by Class Counsel under the "lodestar method," the request for $95,094.90 is also reasonable under the *Goldberger* factors. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

13

49.     The attorney and paralegal hourly billing rates ranging from $125 per hour for paralegals to $450 per hour for senior partners are within the range awarded in wage and hour cases in this district. *See Hall v. Prosource Techs., LLC*, No. 14 Civ. 2502, 2016 U.S. Dist. LEXIS 53791, at *41-44 (E.D.N.Y. April 11, 2016).

50.     The attorneys' fee award represents a 1.89 multiplier of Class Counsel's stated lodestar, which is reasonable in light of the *Goldberger* factors (discussed at length in Plaintiffs' Memo. of Law in Support of their Motion for Final Approval), and is in line with other cases in the Second Circuit. *See, e.g., Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (approving award equal to 5.3 times lodestar); *see also In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691, at *11 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.").

51.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $950.30, which is to be paid from the settlement amount.

52.     The attorneys' fees awarded and expenses reimbursed, shall be paid from the settlement amount.

53.     The Court finds reasonable service awards to the Named and Opt-in Plaintiffs in the amounts of $4,000.00 to the Named Plaintiff, Rufino Cano, and $1,500.00 each to the two Opt-in Plaintiffs. These amounts shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See*, *e.g.*, *Toure v.*

*Amerigroup Corp.*, No. 10 Civ. 5391, 2012 U.S. Dist. LEXIS 110300, at *16 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *Hernandez*, 2015 U.S. Dist. LEXIS 44281, at *22 (approving awards of $7,500 and $2,500 for lead plaintiffs in); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (approving awards of $7,500 and $5,000 for several lead plaintiffs); *Willix,* 2011 U.S. Dist. LEXIS 21102 at *19-*20 (approving service awards of $30,000, $15,000, and $7,500); *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *51 (approving service awards of $10,000 for class representatives); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144, at *22-*23 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

54.     Finally, the Court finds the Settlement Administrator fees of approximately $24,265 is reasonable. Without the Settlement Administrators, Class Members would not have received notice of the settlement, nor would they receive their share of the settlement proceeds. The Settlement Administrator's work included an initial mailing of the settlement notice and claim form along with a business reply envelope (collectively, "Notice Package") to the 1,047 Class Members, taking reasonable steps to obtain the correct addresses of all Class Members, answering Class Members' questions, and obtaining and recording claim forms, objections and

15

opt-out statements. (*See* Schwartz Decl.). The Settlement Administrator has additional work to complete the administration given the payment in installments by Defendants. "Courts regularly award administrative costs associated with providing notice to the class." *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Ca. 2015); *see also Flores v. Mamma Lombardi's of Holbrook, Inc.¸*104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (noting "Courts within this district have awarded up to $50,000 for the settlement claims administrator" and finding estimated fees of $33,500 to the settlement administrator as reasonable); *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 at *46-47 (S.D.N.Y. 2014) (awarding reimbursement of $7,985.74 to class counsel for up front settlement administration fees and approving further estimated fees of $34,000). The Settlement Administrator's fee should be paid from the Settlement Amount.

## X.     Conclusion and Dismissal

55.     The Court approves the terms and conditions of the Settlement Agreement.

56.     The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

57.     The entire case is dismissed on the merits and with prejudice, with no party being considered or deemed to be a prevailing party, and each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all Class Members.

58.     The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class Members as set forth in such agreement.

16

59.     Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

60.     All Class Members are enjoined pursuant to 28 U.S.C. § 1651(a) from initiating or proceeding with any and all suits, actions causes of action, claims, or demands in federal or state court or administrative agency based on putative violations of the FLSA or any state law (including statutory, regulatory, and common law) pertaining to wage and hour claims that have been asserted or could have been asserted in this action or that have been released under the Settlement Agreement.

61.     Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the dismissal with prejudice of this action to enforce the Settlement Agreement until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.


It is so ORDERED this 24th day of April, 2017.


/s/RER
_____
Honorable Ramon E. Reyes, Jr.
United States Magistrate Judge